IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GARY LEE PANSIER and
JOAN RENEE PANSIER,

      Plaintiffs-Appellants,

  v.                                                    Case No. 10-C-0550

STATE OF WISCONSIN
DEPARTMENT OF REVENUE,

      Defendant-Appellee.

## DECISION AND ORDER

This matter comes before the Court on Gary Lee and Joan Renee Pansier's ("Appellants") appeal of the Bankruptcy Court dismissal of their case. On April 1, 2010, Bankruptcy Judge Susan Kelly granted the Wisconsin Department of Revenue's ("WDOR") motion to dismiss based on Appellants' failure to offer meaningful participation in pre-trial discovery, in disregard of the Bankruptcy Court's prior order. For the reasons stated herein I conclude that the Bankruptcy Court did not abuse its discretion and affirm.

## BACKGROUND

Appellants filed their Chapter 7 bankruptcy case on November 12, 2008, received their discharge on May 12, 2009 and their case was closed on June 1, 2009. A little over a month later, on July 15, 2009, Appellants filed a pro-se motion (which the Bankruptcy Court construed as a

complaint) alleging that WDOR had violated the automatic stay by garnishing Mrs. Pansier's payroll checks from Northwest Airlines on three separate occasions. On January 11, 2010 WDOR admitted that it had violated the stay and subsequently returned the improperly garnished amount of $302.11. Appellants acknowledged that the garnished funds were returned but sought additional damages for court costs, interest, and other appropriate relief.

In addition to alleging that WDOR violated the automatic stay, Appellants asked the Bankruptcy Court to determine their tax liabilities for the years 1991 to 2005. The Bankruptcy Court expressed concerns about whether, as a court of limited jurisdiction, it had the authority yo determine Appellants' tax liability for that period of time. The Bankruptcy Court directed the parties to brief the issue in their respective dispositive motions. Discovery then commenced.

On February 11, 2010, Appellants filed a motion for a protective order asking the Bankruptcy Court to limit the scope of discovery so Appellants would not have to provide depositions, essentially arguing that Appellants should not have to provide information that would aid WDOR. The Bankruptcy Court denied the motion on the grounds that WDOR's requested discovery related to their affirmative defenses.

On February 25, 2010, one day before their scheduled deposition, Appellants sent WDOR a "Notice Declining Request for Deposition." WDOR responded by filing a motion to dismiss or to compel discovery. The Bankruptcy Court held a hearing on WDOR's motion on March 2, 2010 and ordered the Appellants to comply with the deposition request. The Court warned the Appellants: "[Y]ou're the plaintiffs here. If you want to stay in this court and have your case heard, then you have to act like the plaintiffs. And the plaintiffs have to get their deposition taken if the defendant wants to take it." (Dkt. 1-38 at pg. 21.) The Court then ordered Appellants to have

their depositions taken and ordered Appellants to attempt to comply with WDOR's request for production of documents.

Another deposition was scheduled for March 8, 2010. Appellants appeared at the deposition and each answered preliminary questions about their background, education, and work history. Once WDOR's attorney began asking substantive questions, however, each Appellant proceeded to plead the Fifth Amendment. WDOR's substantive questions sought to elicit information about the Appellants' defense to WDOR's claim, namely, that they did not reside in Wisconsin between 1991 and 2005 and therefore did not owe Wisconsin taxes.

WDOR, lacking a meaningful deposition, filed another motion to dismiss, which resulted in an April 1, 2010 hearing. At the hearing the Bankruptcy Court told Appellants: "I thought I made it clear at the last hearing that you as the plaintiffs and you being the ones that are pursuing this action against the State had to appear for your deposition and you appeared and when he got into a question about where did you live, when did you get there, it was 'I take the Fifth'". (Dkt. 1-39 at pg. 4.) After a lengthy dialogue with the Appellants regarding the pertinent facts of the case and their failure, as Plaintiffs in the lawsuit, to actively participate in the depositions and documentary discovery, the Bankruptcy Court granted WDOR's motion to dismiss as it related to the Bankruptcy Court's determination of Appellants' outstanding tax liabilities from 1991 to 2005. On May 1, 2010, the Bankruptcy Court issued a written opinion stating that "failure of the [Appellants] to offer meaningful participation in pre-trial discovery, in blatant disregard of this Court's prior Order, was cause for dismissal of this action." (Dkt. 14-1, pg. 4.)

In that same order, the Bankruptcy Court awarded Appellants $591.07 in costs and fees for WDOR's admitted violation of the automatic stay.

**JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction to hear an appeal from a Bankruptcy Court's final judgment pursuant to 28 U.S.C. § 158(a). In its review, a district court must determine whether a bankruptcy court's findings of fact were clearly erroneous. Fed. R. Bankr. P. 8013; *In re Drehsen,* 190 B.R. 441, 442 (M.D. Fla. 1995). The burden is on the appellant to demonstrate that the bankruptcy court's findings are clearly erroneous. *Id.* Legal conclusions are reviewed *de novo*. *Id.*

**ANALYSIS**

Appellants now argue that their invocation of the Fifth Amendment did not justify the Bankruptcy Court's dismissal of their case. Appellants claim they were privileged in their refusal to participate in discovery. Thus, the sole issue on appeal is whether the Bankruptcy Court's dismissal of Appellant's was appropriate.

**A) The Bankruptcy Court Did Not Abuse Its Discretion By Dismissing As Discovery Sanction**

This Court reviews the Bankruptcy Court's decision to dismiss the case for abuse of discretion. *See Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.,* 869 F.2d 1058, 1061 (7th Cir.1989). A bankruptcy court "abuses its discretion" when the district court is left with a definite and firm conviction that the bankruptcy court committed clear error of judgment in the conclusion it reached upon a weighing of all relevant factors. *See Frederick County National Bank v. Lazerow,* 139 B.R. 802, 808 (D. Md.1992), *see also In re Carter,* 100 Bankr. 123, 126 (Bankr. D. Me.1989) ("abuse of discretion is shown only where no reasonable man could agree with the decision").

Procedural rules in Bankruptcy cases are similar to the Federal Rules of Civil Procedure. Discovery in Bankruptcy cases is broad under Fed. R. Bankr. P. 7026(b)(1) which incorporates Fed. R. Civ. P. 26. Under this rule WDOR had a right to obtain discovery through a deposition into any

4

nonprivileged matter relevant to Appellants' claim. Here, it is clear that WDOR's request to take Appellants' depositions was reasonable and WDOR had a substantial need for the specific information requested in order to establish where Appellants lived between 1991 and 2005.

Appellants claim their refusal to answer deposition questions was justified by their Constitutional rights under the Fifth Amendment. The Fifth Amendment states that "no person ... shall be compelled in any criminal case to be a witness against himself." However the Fifth Amendment does not normally allow plaintiffs to avoid their own depositions in their own civil cases. "Given liberal federal discovery rules, the inapplicability of the Fifth Amendment's protection against self-incrimination, and the need to prove their case, civil litigants almost always must testify in depositions". *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 510 (1989). This Circuit has recognized that a plaintiff's "Fifth Amendment privilege against being compelled to be a witness against himself in any *criminal* case does not afford [the plaintiff] protection against giving testimony that will disclose his *civil* liability . . . Unlike a forfeiture or the imposition of a fine, the [tax] assessment is merely a method of enforcing a civil obligation". *Patrick v. United States,* 524 F.2d 1109, 1119 (7th Cir. 1975) (citing *United States v. Coin & Currency,* 401 U.S. 715 (1971) (emphasis added). Appellants' contention that they reasonably feared their answers to deposition questions would expose them criminally is simply not credible. *See Ryan v. C.I.R.,* 568 F.2d 531 (7th Cir.1977). Appellants have simply failed to provide any reasonable support for their argument that deposition answers could result in criminal sanctions. Their position is unpersuasive because a witness's fear of prosecution cannot be merely "trifling or imaginary," but must be "substantial and real." *In re Corrugated Container Antitrust Litigation,* 655 F.2d 748 (7th Cir.1981), *aff'd* 459 U.S. 248.

The questions WDOR asked—or at least attempted to ask—at Appellants' deposition did not provide a basis for self-incrimination on any criminal matter. Rather, they related to Appellant's domicile, trust property, and bankruptcy proceedings. Appellants' claim that they somehow thought answering these questions might expose them criminally is wholly unreasonable.

Sanctions are appropriate for discovery violations. *Ienco v. Angarone* 429 F.3d 680, 685 (7th Cir. 2005) (holding court did not abuse its discretion in imposing sanctions against plaintiff for asserting his Fifth Amendment privilege against self-incrimination in response to deposition questioning upon determination that assertion lacked merit and was obstructionist tactic). For first time discovery violations a bankruptcy court has the authority to order the violating party to comply. *See* Fed. R. Bankr. P. 7037 (incorporating Fed. R. Civ. P. 37). After being ordered to provide discovery, if a party still refuses, the bankruptcy court has the option of dismissing the case. *See* Fed. R. Bankr. P. 7037(b)(2)(A)(v). Bankruptcy Rule 7041 incorporates Federal Rule of Civil Procedure 41(b), making it applicable to bankruptcy cases. *Id.* at 1060. Under Rule 41(b), "if a plaintiff fails to prosecute or to comply with [the rules of civil procedure] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ . P. 41(b). A dismissal is, however, a particularly harsh sanction that should generally be applied only in "extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing ." *Pyramid,* 869 F.2d at 1061 *citing Webber v. Eye Corp.,* 721 F.2d 1067, 1069 (7th Cir.1983). This Circuit has explained:

> The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable. In determining whether the sanction of dismissal constituted an abuse of discretion, we look at the entire procedural history of the case. Although there is no requirement that the district court select the least drastic sanction, district courts should only impose sanctions that are proportionate to the circumstances surrounding a party's failure

6

> to comply with discovery rules. Among the factors included in the analysis are the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit.

*Rice v. City of Chicago,* 333 F. 3d 780, 784 (7 Cir. 2003) (internal quotations omitted). As such, courts generally may not dismiss a case without providing an explicit warning to the plaintiff that his or her case is in danger of being dismissed. *Sharif v. Wellness Int'l Network,* 376 F.3d 720, 725 (7th Cir.2004) *citing Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir.2003). A case may only be dismissed without such a warning "where it is clear that counsel must have expected his actions (or inaction) to be answered with dismissal." *In the matter of Bluestein & Co.,* 68 F.3d 1022, 1026 (7th Cir.1995).

Here Appellants actions unmistakably demonstrate a pattern of contumacious conduct and an intent to avoid WDOR's reasonable discovery requests. Appellants first filed a motion to limit discovery in an attempt to block their deposition. The motion was denied. Next they intentionally failed to appear for the first scheduled deposition. The Bankruptcy Court responded by ordering them to submit to a deposition. Appellants then appeared at the second scheduled deposition and refused to answer any meaningful questions. Now Appellants claim they did not know that if they refused to answer questions at the deposition their case could be dismissed. But Appellants had been warned. After Appellants failed to appear for their first noticed deposition the Bankruptcy Court gave them a clear warning on the record: "If you want to stay in this court and have your case heard, then you have to act like the plaintiffs. And the plaintiffs have to get their deposition taken if the defendant wants to take it." (Dkt. 1-38 at pg. 21.) The Bankruptcy Court went on: "I am ordering you to appear. If that's what you need to have it be this clearly said, you must appear" because WDOR is "entitled to take your depositions under oath about the claims you're making."

7

(Dkt. 6 at 15 quoting hearing transcript.) Appellants now attempt to poke holes in these warnings, arguing that the Bankruptcy Court merely ordered them to appear but did not order them to give answers and that the warning did not include possible dismissal. I am unpersuaded by Appellants' tortured reading of the Bankruptcy Court's clear and unmistakable warnings. The language "if you want to stay in this court" is a plain indication that Appellants may face dismissal for repeated discovery violations. The Bankruptcy Court could not have been more clear that Appellants needed to answer relevant questions—not just background questions—by explaining that WDOR is "entitled to take your deposition under oath *about the claims you are making.*"

**B) Alternatively, Dismissal Was Proper Because Appellants' Taxes Are Not Dischargeable**

Having considered the entire procedural history of this case, I also conclude that dismissal of Appellants' claim seeking a determination of their tax liability for calendar years 1991 through 2008 was proper as a matter of law. At the conclusion of their underlying bankruptcy case, Appellants received a Chapter 7 discharge on May 12, 2009. Bankruptcy courts do not have the authority to discharge certain tax obligations. Specifically, a Chapter 7 bankruptcy "discharge ... does not discharge an individual debtor from any debt ... for a tax ... with respect to which a return, or equivalent report or notice, if required ... was not filed or given." 11 U.S.C. § 523(a)(1)(B).

Under this provision, Appellants' tax obligations for 1991 through 2000, and calendar year 2006, if any, are clearly nondischargeable. Appellants admit they failed to file Wisconsin returns for those years. Appellants litigated their tax liability for tax years 1995-1998 before the Wisconsin Tax Appeals Commission and lost. They did not seek further review, and the Bankruptcy Court thus lacks authority to review the 1995 to 1998 tax liability. *See* 11 U.S.C. § 505(a)(2)(A). WDOR also sent the Appellants estimated assessments for 1991-1994 and 1999-2000 and informed them that they had 60 days to appeal. They did not appeal and the tax assessments became final state

8

administrative determinations. This determination would also appear binding. Appellants are not entitled to a second forum, in federal bankruptcy court, to address their state law claim that they did not owe Wisconsin tax. And since they failed to file returns, the debt was not discharged.

Appellants tax obligations for 2001 to 2005 are likewise nondischargeable. Appellants did file tax returns for the years 2001 to 2005, but they did so on January 20, 2009, over two months after they petitioned for bankruptcy and well after the taxes had been assessed. This Circuit has refused to recognize a post-assessment filing as a "return" for purposes of § 523(a)(1)(B)(i). *See In re Payne,* 431 F.3d 1055, 1057 (7th Cir.2005) (holding that return filed by debtor six years late and after the IRS had assessed his tax liability, did not constitute an "honest and reasonable" endeavor to comply with the law and, thus, did not qualify as a "return" within the meaning of the Bankruptcy Code). Moreover, though not yet applicable when *Payne* was decided, language newly added to § 523(a) now provides: "[f]or purposes of this subsection, the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C. § 523(a), as amended by § 714 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23, 128-29 (Apr. 20, 2005). Thus, any tax liability Appellants have for those years is also nondischargeable. Appellants' 2007 return was timely filed, and the taxes due were paid. The 2008 return was filed post-petition, however, and thus taxes due on that return would remain due as well. *See United States v. Young*, 535 U.S. 43, 44 (2002) ("A discharge under the Bankruptcy Code does not extinguish certain tax liabilities for which a return was due within three years before the filing of an individual debtor's petition." (citing 11 U.S.C. §§ 523(a)(1)(A), 507(a)(8)(A)(i)).

It follows that any tax liability Appellants have for the period from 1991 through 2008, except for 2007, was nondischargeable as a matter of law. And to the extent Appellants had not

9

already waived their right to challenge the WDOR's determination of their tax liability, they remained free to do so under Wisconsin law. In view of the foregoing, and under the circumstances of this case, there was no reason for the Bankruptcy Court to expend its resources determining the amount of Appellants' State tax liability. Accordingly, dismissal of the case was proper even if not as a sanction for Appellants' willful failure to comply with the Court's discovery order. For this reason, as well, the Bankruptcy Court's decision is therefore affirmed.

Dated this      13th         day of October, 2010.

      s/ William C. Griesbach
William C. Griesbach
United States District Judge